```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
RAYMOND SMALLS,                     :
                                    :
        Plaintiff,                  :      01 Civ. 5412 (BSJ)
                                    :
             v.                     :
                                    :          ORDER
ALLSTATE INSURANCE CO. and          :
WILLIAM SMITH,                      :
                                    :
        Defendants.                 :
-----------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On June 15, 2001, Plaintiff Raymond Smalls ("Plaintiff")
filed a five-count Complaint against Defendants Allstate
Insurance Company ("Allstate") and former Allstate manager
William Smith ("Smith"), alleging discrimination, a hostile work
environment, intentional infliction of emotional distress, and
retaliation based on race.[1]  Defendants Allstate and Smith moved
for summary judgment on all counts.  For the reasons set forth
below, Defendants' motions are granted and the Complaint is
dismissed in its entirety.

### Background

Plaintiff has been employed by Allstate in various
capacities and in various locations in the New York metropolitan
region since 1986.  In October 1997, Plaintiff received a
promotion to the position of Frontline Performance Leader

---

[1] The Complaint set forth four claims against both Allstate and Smith and a
fifth claim of retaliation asserted solely against Allstate.

1

("FPL"), and, as a result, was transferred from the Elmhurst office to the Roslyn office. Shortly thereafter, the Roslyn Auto Claims Unit, which included Plaintiff and approximately 24 other people, was relocated to Allstate's office in Hicksville, where Defendant Smith was the Market Claims Manager ("MCM"). (DiSomma Aff., Exhs. B & D, Smalls Tr. 22-24, Smith Tr. 24).

In January 1999, Allstate's Resolution Hotline received two anonymous calls complaining about Smith's unprofessional behavior. (DiSomma Cert., Exhs. J & K, Exh. I, Reavis Tr. 35-36). The first anonymous caller complained that Smith used profane language and acted unprofessionally because Smith believed the caller was not performing his job properly. (DiSomma Aff., Exh. J). The caller, who was later learned to be Plaintiff, did not mention race or racial discrimination. (DiSomma Aff., Ex. B, Smalls Tr. 151). The second anonymous caller, later identified as Allstate employee Liz Glidden, complained that Smith "belittled" Plaintiff "in the presence of other employees." (DiSomma Aff., Exh. K, Glidden Tr. 16). Glidden later testified that she called the Hotline after she had witnessed an incident in January 1999 between Plaintiff and Smith where they were "yelling loudly at each other." (Glidden Tr. 11-12).

In February 1999, Frontline Performance Expert ("FPE") Vinnie Friscia sent a five-page letter to Human Resources

Manager Susie Reavis describing several incidents in which Smith used profanity and subjected him to verbal abuse and humiliation. (DiSomma Aff., Exh. H). As a result of these complaints, Allstate's Human Resources Department opened an investigation into Smith's workplace behavior. (DiSomma Aff., Exh. I, Reavis Tr. 42). All of the FPLs from the claims units in the Hicksville office were interviewed and an Investigation Summary Report dated March 16, 1999 summarized the investigation. (DiSomma Aff., Exh. M). According to Reavis, the complaints of the Hicksville FPLs included the following: (1) Smith regularly engaged in disparaging and insensitive conduct toward his managers, using profane and abusive language; (2) three managers from Roslyn stated that they had a difficult time adjusting to Smith's tough and demanding behavior; (3) one minority manager was treated particularly harshly and was belittled, yelled at, and cursed at by Smith in front of other employees.

Reavis recommended the immediate termination of Smith's employment based on the findings of the investigation that his treatment of the managers in the Hicksville office was unprofessional. Smith submitted a letter of resignation upon learning the results of the investigation, and ceased working at Allstate on or about March 19, 1999. (DiSomma Aff., Exh. D, Smith Tr. 34).

During the investigation of Smith, Robert Bond, an FPE in
the Elmhurst office, requested that Plaintiff be transferred to
Elmhurst to fill a vacant FPL position in their office.  Smith's
supervisor, Joel McDonald, approved the transfer, subject to
confirmation that Plaintiff wanted to be transferred to
Elmhurst.  Allstate never confirmed Plaintiff's desire for a
transfer to Elmhurst.  Upon being transferred, Plaintiff
complained that he was unhappy because the transfer increased
his commute to work, and four weeks after his transfer,
Plaintiff was returned to his position in Hicksville. (DiSomma
Aff., Exh. C, Smalls Tr. 324, McDonald Tr. 37, Bond Aff. ¶ 6).

On March 15, 1999, also during the investigation of Smith,
Plaintiff filed a complaint with the New York State Division of
Human Rights (the "NYSDHR") alleging that Allstate unlawfully
discriminated against him based on his race in violation of New
York Human Rights Law, Section 296 as evidenced by his transfer
to the Elmhurst office, his verbal harassment by Smith, and
racially derogatory statements made to other employees ("NYSDHR
Complaint I").  (DiSomma Aff., Exh. O).

After Smith ceased working at Allstate, Plaintiff continued
to work in the Hicksville office as an FPL.  In April 1999,
Debbie Fiske was appointed MCM at the Hicksville office.  In
October 1999, Allstate underwent a nationwide Personnel
Reorganization, reducing the overall number of managerial

positions, including FPLs, and redeploying them to service-oriented positions. Fiske's evaluation of the leadership skills of the FPLs on her staff resulted in Plaintiff and two other FPLs being redeployed to senior claim adjuster positions. The redeployment did not impact Plaintiff's salary or his ability to receive a salary increase. As a result of the redeployment, Plaintiff promptly filed another complaint with the NYSDHR ("NYSDHR Complaint II"), alleging retaliation for filing his NYSDHR Complaint I. (DiSomma Aff., Exh. X). The NYSDHR dismissed both complaints. (DiSomma Aff., Exh. Y).

On June 15, 2001, Plaintiff filed a five-count Complaint in the District Court for the Southern District of New York against Allstate alleging discrimination, a hostile work environment, intentional infliction of emotional distress, and retaliation based on race ("Complaint").

## Discussion

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment should "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." To prevail, the party moving for summary judgment must "demonstrate the absence

of a genuine issue of material fact." Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party does so
successfully, the non-moving party must "set forth specific
facts showing that there is a genuine issue for trial."  Fed. R.
Civ. P. 56(e).  The court must draw all reasonable inferences
and resolve all ambiguities in favor of the non-moving party.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  However, the non-movant cannot rely on "conclusory
statements or on contentions that the affidavits supporting the
motion are not credible." Ying Jang Gan v. City of New York,
996 F.2d 522, 535 (2d Cir. 1993).

The Second Circuit has warned that district courts should
be "particularly cautious about granting summary judgment to an
employer in a discrimination case when the employer's intent is
in question.  Because direct evidence of an employer's
discriminatory intent will rarely be found, 'affidavits and
depositions must be carefully scrutinized for circumstantial
proof which, if believed, would show discrimination.'" Schwapp
v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Gallo
v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir.
1994)).  That said, a court may grant a defendant's motion for
summary judgment in an employment discrimination case where the
plaintiff relies "on conclusory allegations of discrimination
and the employer provides a legitimate rationale for its

conduct." Tojzan v. New York Presbyterian Hosp., No. 00 Civ.
6105 (WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

## II. Discrimination Claims

Plaintiff first alleges race discrimination under both
Title VII and New York Executive Law ("NYEL") Section 290.
Discrimination suits brought under Title VII follow the familiar
burden-shifting regime established by McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973). First, the plaintiff must make out
a prima facie case of discrimination by showing that (1) he
belongs to a protected class; (2) he suffered an adverse
employment action; and (3) the circumstances surrounding the
adverse employment action give rise to an inference of
discrimination. Brown v. Coach Stores, Inc., 163 F.3d 706, 709
(2d Cir. 1998) (citing McDonnell Douglas). The burden then
shifts to the employer to show a legitimate, nondiscriminatory
reason for the adverse employment action. If the employer does
so, the final burden remains with the plaintiff to show that the
nondiscriminatory reason asserted by the employer was pretextual
and that the employer discriminated against him. Reeves v.
Sanderson Plumbing Products, Inc., 530 U.S. 133, 143-44 (2000).

Although Title VII does not define adverse employment
actions "solely in terms of job termination or reduced wages and
benefits," Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466
(2d Cir. 1997), it "must be more disruptive than a mere

inconvenience or an alteration of job responsibilities."
Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d
Cir. 2000)(citation omitted); see also Richardson v. New York
State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999).
An employee suffers an adverse employment action if a
"materially adverse change" in the terms and conditions of his
employment takes place.  Galabya v. New York City Bd. of Educ.,
202 F.3d 636, 640 (2d Cir. 2000).  As the court explained in
Monica v. New York City Off-Track Betting Corp., No. 93 Civ.
6371 (RPP), 1995 WL 117879 (S.D.N.Y. 1995),

> [a] materially adverse change might be indicated by a
> termination of employment, a demotion evidenced by a
> decrease in wage or salary, a less distinguished
> title, a material loss of benefits, significantly
> diminished material responsibilities, or other indices
> that might be unique to a particular situation.

Monica, 1995 WL 117879 at *8; see also Davis v. City University
of New York, No. 94 Civ. 7277 (SHS), 1996 WL 243256, at *8
(S.D.N.Y. 1996).

The burden of proof and legal standards for NYEL § 290 are
the same as those applied in Title VII cases.  See Classic Coach
v. Mercado, 722 NY.S.2d 551, 552 (2d Dep't 2001), Lumhoo v. Home
Depot USA, Inc., 229 F. Supp. 2d 121, 135 (E.D.N.Y. 2002)
(stating that New York State employment discrimination laws are
analyzed under the same framework that governs Title VII).

In his discrimination claims against Allstate and Smith, Plaintiff alleges the following adverse employment actions: (1) Smith's use of abusive, profane, and insulting language toward Plaintiff in the presence of other employees; (2) Allstate's retaliation for Plaintiff's complaint of discrimination; (3) Plaintiff's transfer from Hicksville to Allstate's Elmhurst office in February 1999; and (4) Plaintiff's disparate treatment during Smith's employment at Allstate from January 1998 through February 1999 because he was African American. (Compl. ¶ 26).

As an initial matter, Plaintiff's Title VII claims against Smith must be dismissed because there is no basis for personal liability against an individual under that statute. See Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995). Since Smith may be held liable under the NYEL, however, those claims remain.

First, Plaintiff's allegations of verbal abuse and insults by Smith and retaliatory actions by Allstate are addressed infra as part of Plaintiff's hostile work environment and retaliation claims. However, the Court also notes here that "being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment." Lee v. New York State Dept. of Health, 2001 U.S. Dist. LEXIS 11287, at *69 (S.D.N.Y. 2001).

Second, Plaintiff's transfer claim also fails because his Elmhurst does not constitute an adverse employment action. Plaintiff retained the same position, the same responsibilities, and the same salary and benefits. It is well-settled that a lateral transfer does not rise to the level of an adverse employment action as a matter of law. See, e.g., Mishk v. Destefano, 5 F. Supp. 2d 294, 202 (S.D.N.Y. 1998); Pimentel v. City of New York, 2003 U.S. App. LEXIS 18863, at *3-4 (2d Cir. Sept. 11, 2003). The only substantive difference between the two positions was that the Elmhurst position resulted in a longer commute – which is an inconvenience, not an adverse employment action. See Galabya, 202 F.3d at 640 (holding that an incident must be "more disruptive than a mere inconvenience" to constitute an adverse employment action).

Even if this Court found that the transfer did establish a prima facie case for discrimination – which it does not – Plaintiff's discrimination claims would be dismissed for failure to rebut Allstate's legitimate business reasons for transferring Plaintiff to Elmhurst. The undisputed affidavit of a former Allstate employee, Robert Bond, stated that he had requested that Plaintiff be transferred to Elmhurst to fill a vacant FPL position in their office. (Bond Aff. ¶¶ 4-5). Moreover, as soon as Allstate learned that Plaintiff was unhappy about the transfer because of the longer commute to Elmhurst, Allstate

promptly reinstated Plaintiff in the Hicksville office.  (Bond Aff. ¶ 6).

Third, Plaintiff also bases his discrimination claim on his allegation that Smith treated him differently than other similarly situated employees "because [he] was African American."  (Compl. ¶¶ 15, 26).  "[A]n inference of discrimination may be drawn by a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably."  Hunter v. St. Francis Hosp., 2003 U.S. Dist. LEXIS 14602, at *15 (E.D.N.Y. Aug. 20, 2003).  Here, however, the record is devoid of any evidence from which an inference of discrimination may be drawn.  In addition to evidence that Smith was aggressive and unprofessional with all of his managers, Plaintiff has failed to offer a single act, statement, or admission by Smith or any other manager to support his allegation that he was treated more harshly because of his race.  "[A] Plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." Little v. New York, 1998 U.S. Dist. LEXIS 21797, at *14-15 (E.D.N.Y. June 8, 1998), aff'd, 1999 U.S. App. LEXIS 7768 (2d Cir. April 14, 1999).

Defendants' motions for summary judgment on Plaintiff's racial discrimination claims are therefore granted, and those claims are hereby dismissed.

## III. Hostile Work Environment Claim

Plaintiff also asserts claims against Allstate and Smith of hostile work environment based on race.  To prevail on a hostile work environment claim, the complained of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (2003).  The complained of "incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."  Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 62 (2d Cir. 1992).

Plaintiff cited incidents of Smith allegedly "verbal abus[ing]" Plaintiff at staff meetings, using vulgarity and curse words, threatening Plaintiff with subordination, pointing his finger in Plaintiff's face during a discussion, and requiring Plaintiff to do additional work.[2]  (Compl. ¶ 15; Pl. Counter-Stmt. Facts ¶ 28).  While Plaintiff alleges in a

_____

[2] Plaintiff also alleges that Smith made racially derogatory comments about other employees years before Plaintiff was employed under Smith.  These allegations suffer from two infirmities that preclude their consideration: (1) they are not based on admissible evidence but rather on covertly recorded conversations with third parties, and (2) incidents that occurred years earlier and which Plaintiff did not witness, may not be used to sustain a hostile work environment claim.  See P.V. Delta Airlines, Inc., 102 F. Supp. 2d 132 (E.D.N.Y. 2000); Walker v. Columbia Univ., 1998 WL 567909 (S.D.N.Y.), aff'd, 182 F.3d 901 (2d Cir. 1999)(excluding racial slurs and comments not known by the plaintiff during the time she allegedly suffered the hostile work environment).

conclusory fashion that these incidents were racially motivated, he offers no facts in support.[3]

The case law is clear on this point.  The anti-discrimination laws are not "a general civility code," and they do "not prohibit all verbal or physical harassment in the workplace," only that which is motivated by specified improper considerations.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998); see also Kodengada v. IBM, 88 F. Supp. 2d 236, 243 (S.D.N.Y. 2000)("Offensive comments, such as using profanity to refer to a co-worker, [do] not rise to the level required to demonstrate a discriminatory hostile work environment.").  The only specific, race-related incident between Smith and Plaintiff involved Smith's comment, made at a company picnic, that he didn't think African Americans needed sunblock.  Smalls Dep. 294: 10-11.  While such a comment may have offended Plaintiff, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(citation and internal quotation omitted).

Therefore, where there is no evidence that an allegedly hostile work environment was motivated by a plaintiff's race,

---

[3] To the contrary, one of Plaintiff's co-workers testified that she did not perceive an altercation that she witnessed between Smith and Plaintiff as being racially motivated.  (DiSomma Aff., Exh. H).

the claim must be dismissed.  <u>Jessamy v. City of Rochelle</u>, 292

F. Supp 2d 498, 512 (S.D.N.Y. 2003)(stating that "the case law

proves . . . that the absence of such conduct [of any overtly

racial character] is a factual omission that is necessarily

fatal to a race-based hostile work environment claim").  Here,

as in <u>Walker v. New York City Transit Auth.</u>, 2001 WL 1099022

(S.D.N.Y. 2001),

> [a]lthough the record suggests that plaintiff was
> subjected to an extremely unpleasant work environment
> in which [his manager] regularly reprimanded him in
> the presence of co-workers, the record contains no
> evidence from which a reasonable jury could conclude
> that plaintiff's treatment was motivated by any
> discriminatory animus based on race.

<u>See also</u> <u>Neishlos v. City of New York</u>, 2003 WL 22480043, *7

(S.D.N.Y. 2003)(holding that the allegations draw a "picture of

a supervisor who is unpleasant, unfair and arbitrary – but not

ethically or religiously biased").

Furthermore, courts have dismissed hostile work environment

claims in the face of far stronger evidence of harassment and

racist comments than presented here.  <u>See</u>, <u>e.g.</u>, <u>Richardson</u>, 180

F.3d 426 (affirming the district court's grant of summary

judgment on a hostile work environment allegation where

Plaintiff had identified fifteen alleged specific incidents of

harassment, including three that involved racial slurs); <u>Curtis

v. Airborne Freight Corp.</u>, 87 F. Supp. 2d 234 (S.D.N.Y.

2000)(dismissing on summary judgment a hostile work environment

allegedly created by nine incidents over ten months, including two racist comments).

In sum, this Court finds that Plaintiff has failed to allege facts sufficient to sustain a race-based hostile work environment claim, and, therefore, Defendants' motions for summary judgment are granted and the claims are dismissed.

## IV.  Retaliation Claim

In addition to the preceding counts, Plaintiff also asserts a claim of unlawful retaliation solely against Allstate.  Under Title VII "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  A plaintiff making a retaliation claim under Title VII must prove four elements: (1) that he participated in a protected activity; (2) that his employer was aware of the activity; (3) that an adverse employment action occurred; and (4) that there was a causal connection between the protected activity and the adverse employment action.  See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996); Cruz, 202 F.3d at 566.

Plaintiff has failed to show either a temporal or causal connection between a protected activity and any alleged adverse employment action.  See McMenemy v. City of Rochester, 241 F.3d

279, 284 (2d Cir. 2001)("Title VII protects an employee from any employer . . . who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings."); Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986) (stating that proof of a causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action). Although Plaintiff's transfer to Elmhurst on February 5, 1999 occurred soon after Plaintiff had made a complaint to Allstate's Resolution Hotline in January 1999, that call was made anonymously and, since Plaintiff did not refer to any racial discrimination, does not constitute a protected activity within the meaning of Title VII because Plaintiff did not complain about federally protected discriminatory behavior.[4] See Moran v. Fashion Inst. Of Tech., 2002 LEXIS 19387, at *23-24 (S.D.N.Y. Oct. 7, 2002). No evidence has been presented suggesting that Plaintiff's transfer was in any way caused or motivated by Defendant's knowledge of his protected activities protesting discrimination. In fact, Smith played no role whatsoever in the decision to transfer Plaintiff. Rather, as Defendants point out, the decision was made by Smith's supervisor, McDonald, at the request of a

---

[4] The Court notes that Plaintiff's transfer to Elmhurst occurred before his NYSDHR Complaint I, which was filed on March 15, 1999.

manager in the Elmhurst office to fill a need at the Elmhurst office. (Def. Smith Reply at 24).

Similarly, Plaintiff's redeployment in October 1999, eleven months after Plaintiff filed a complaint with the NYSDHR, is also insufficiently connected to establish a prima facie case of retaliation. To establish a causal connection based on temporal proximity, a protected activity must be "closely followed in time by the adverse action." Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996). See, e.g., Clark County Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001)(stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" and citing cases in which three- and four-month periods were found to be insufficient); James v. Newsweek, 1999 U.S. Dist. LEXIS 15588, at *48 (S.D.N.Y. Sept. 30, 1999), aff'd, 2000 U.S. App. LEXIS 8805 (2d Cir. May 2, 2000)(finding a four month interval to be too long).

Plaintiff has failed to rebut Allstate's showing that his redeployment was part of a nationwide reorganization effort that included as one of its main initiatives reducing the number of overall managerial positions and moving them to service-oriented positions. (Def. Allstate Br. at 19; Fisk Aff. ¶ 4). As a

result, Plaintiff was one of hundreds of claim managers throughout the country who were removed from management positions and redeployed in "frontline" service positions. (Id.). More importantly, Plaintiff has presented no evidence that Fiske, the manager charged with evaluating the leadership skills of the FPLs, possessed any knowledge of Plaintiff's NYDHR Complaint when she ranked her managers for redeployment. (Pl. Opp. at 29; Fiske Aff. ¶ 9). In her affidavit, Fiske stated that she did not consult with Smith or any other Allstate employees before ranking the FPLs and evaluated them solely on the leadership skills they exhibited while she was MCM. (Def. Allstate Br. at 19; Fiske Aff. ¶ 5).

Therefore, given the inadequacy of facts alleged, Allstate's motion for summary judgment is granted, and Plaintiff's claim of retaliation under Title VII is dismissed.

## V. Intentional Infliction of Emotional Distress

Finally, Plaintiff claims intentional infliction of emotional distress against both Allstate and Smith. Plaintiff acknowledges in his opposition that the statute of limitations for claims of intentional infliction of emotional distress is one year. The most recent alleged act of Smith relating to this claim occurred more than one year prior to the filing of Plaintiff's Complaint. Plaintiff argues, however, that the statute of limitations should have been tolled during the

pendency of the investigation by the NYSDHR.  Plaintiff

correctly points out that district courts within the Second

Circuit have disagreed about whether to toll claims in these

circumstances.  "[T]he weight of authority, however, has held

that state common law claims are not tolled during the pendency

of an NYSDHR or EEOC claim."  Duran v. Jamaica Hosp., 219 F.

Supp. 2d 63, 68 (E.D.N.Y. 2002).

In fact, relying on the Supreme Court's analysis of the

congressional intent of Title VII in Johnson v. Railway Express

Agency, Inc., 421 U.S. 454 (1975), this Court has previously

found that "[a plaintiff's] intentional infliction of emotional

distress claim was not tolled by the pendency of her EEOC claims

and must have been brought within the one year statute of

limitations."  King v. Friend of a Farmer, Corp., 2001 WL

849460, at *4 (S.D.N.Y. 2001).  Here, as in King, because

Plaintiff's common law intentional infliction of emotional

distress claim was not tolled during the pendency of the NYSDHR

proceeding, it is time-barred.

Even if Plaintiff's claim was not time-barred, Plaintiff

has failed to establish the four elements of a claim of

intentional infliction of emotional distress: "(1) extreme and

outrageous conduct; (2) intent to cause severe emotional

distress; (3) a causal connection between the conduct and the

injury; and (4) severe emotional distress."  Gonzalez v.

Bratton, 147 F. Supp. 2d 180, 194 (S.D.N.Y. 2001).  New York sets a high threshold for conduct that is considered 'extreme and outrageous' enough to constitute intentional infliction of emotional distress.  Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 680-81 (S.D.N.Y. 1995)(citing Murphy v. Am. Home Products Corp., 58 N.Y.2d 293, 303 (N.Y. 1983)(stating that New York courts find liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")).

Plaintiff's citations to workplace arguments with Smith concerning Plaintiff's performance are insufficient to meet the strict standards for claims of intentional infliction of emotional distress set forth by New York Courts.  See Walker v. New York City Transit Auth., 2001 WL 1098022, at *14 (S.D.N.Y. Sept. 19, 2001).  Moreover, Plaintiff's assertion that he cried once after his last argument with Smith, does not constitute "severe emotional distress," the fourth element required by this court to state a claim of intentional infliction of emotional distress.  Gonzalez, 147 F. Supp. 2d at 194 (emphasis added).

Accordingly, Defendants' motions for summary judgment are granted, and the claims of intentional infliction of emotional distress against Smith and Allstate are dismissed.

## VI. Conclusion

The Court is sympathetic to Plaintiff's discontent with Smith's unprofessional, rude, and aggressive workplace behavior while Smith was employed at Allstate. However, the facts alleged do not support claims for race-based discrimination, hostile work environment, intentional infliction of emotional distress or retaliation under Title VII.

Accordingly, Defendants' motions for summary judgment are granted and the Complaint is dismissed in its entirety.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           October 10, 2005

COPY MAILED FAXED TO:
COUNSEL FOR PLTFF(S): ✓
COUNSEL FOR DFT(S): ✓
PLTFF PRO SE:_____
DFT. PRO SE:_____
DATE: 10/10/05
BY:_____